UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD DAVE RENTERIA, CDCR #P-26757,<br><br>        Plaintiff,<br><br>v.<br><br>CUEVAS, 3d Watch Correctional Officer; BYRNES, 3d Watch Correctional Officer; KAKO, 3d Watch Correctional Officer; MEEKS, 2d Watch Correctional Officer; M. GARCIA, 2d Watch Correctional Officer; RICO, Correctional Sergeant; T. MARTINEZ, Correctional Lieutenant; and MARCUS POLLARD, Warden,<br><br>        Defendants. | Case No.: 21-CV-1507 JLS (MSB)<br><br>**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A AND DIRECTING CLERK OF COURT TO ISSUE A SUMMONS PURSUANT TO FED. R. CIV. P. 4(b)** |

  Plaintiff Ronald Dave Renteria, while incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding without counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 25, 2021.[1] *See*

---

[1] Plaintiff has since been transferred to the custody of the Sheriff of Los Angeles County in order to appear for a suitability and associated resentencing hearing before the Los Angeles County Superior Court in Case No. KA038347. *See* ECF No. 15 at 2, 6; ECF No. 18.

1

*generally* ECF No. 1 ("Compl."). In Count 1 of his Complaint, Plaintiff claims Defendants Pollard, Cuevas, Byrnes, Kako, Meeks, and Garcia violated his Eighth Amendment rights by failing to employ protective and social distancing measures sufficient to prevent a COVID-19 outbreak within RJD's "C" Facility in December 2020. *See* Compl. at 3–7. In Count 2, Plaintiff alleges Defendants Cuevas, Garcia, Rico, and Martinez fabricated escape charges against him in February 2021 in order to retaliate against him for filing an administrative grievance related to his having contracted COVID-19. *Id.* at 8–11. Plaintiff seeks declaratory and injunctive relief, including placement in a residential facility, single cell status, or early release on parole,[2] as well $250,000 in compensatory and punitive damages against each Defendant. *Id.* at 12.

## PROCEDURAL BACKGROUND

At the time he filed his Complaint, Plaintiff filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2 ("IFP Mot."). On September 17, 2021, the Court (i) denied Plaintiff's IFP Motion because the financial affidavits he submitted in support failed to demonstrate he was unable to pay civil filing fees and (ii) dismissed the case based on Plaintiff's failure to satisfy 28 U.S.C. § 1914(a)'s fee requirements. *See generally* ECF No. 4. However, the Court granted Plaintiff leave to re-open his case by paying the full $402 fee by November 15, 2021. *Id.* at 4–5. Plaintiff was also cautioned that if he elected to proceed by paying the fee, his Complaint would nevertheless be subject to a mandatory initial screening pursuant to 28 U.S.C. § 1915A. *See id.* at 4 n.2.

/ / /

---

[2] The Court notes Plaintiff may not seek release as a remedy in a Section 1983 suit. Although "the literal terms of § 1983 might seem to cover" claims that a prisoner's confinement violated the Constitution, *see Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973), "the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement,'" *id.* at 927–28 (quoting *Preiser*, 411 U.S. at 486).

On October 12, 2021, Plaintiff filed a Notice of Appeal to the Ninth Circuit. *See* ECF No. 5. Ten days later, and while his appeal was still pending, Plaintiff also paid the $402 civil filing fee. *See* ECF No. 9 (Receipt No. CAS133421). Therefore, on February 23, 2022, the Ninth Circuit remanded the instant case for further proceedings on the merits. *See* ECF No. 10 (Ninth Circuit Appeal No. 21-56121). On March 17, 2022, the Ninth Circuit issued its mandate, and the Court set an appeal mandate hearing for April 7, 2022. *See* ECF No. 11. Plaintiff responded by filing two letters requesting to stay the proceedings until after his transfer to Los Angeles for a post-conviction relief proceeding set for May 3, 2022. *See* ECF No. 12 at 2; ECF No. 15 at 2. The Court construed Plaintiff's requests as motions to continue the date set for the spreading of the Ninth Circuit's mandate and reset that hearing for May 26, 2022—three weeks after Plaintiff's May 3, 2022 hearing—in order to accommodate his court appearance. *See* ECF Nos. 14, 17. On May 9, 2022, Plaintiff filed a notice of change address confirming his transfer to the Los Angeles County Central Jail, and on May 26, 2022, this Court held its hearing, entered the Ninth Circuit's Order, and spread the mandate. *See* ECF Nos. 18–20.

Thus, the Court now turns to a preliminary screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(a).

## SCREENING PURSUANT TO 28 U.S.C. § 1915A(a)

### I. Standard of Review

Plaintiff's Complaint is subject to preliminary review because he is a prisoner and seeks "redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Section 1915A "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)). The required screening provisions of section 1915A apply to all prisoners, no matter their fee status. *See, e.g.*, *Resnick v. Hayes*, 213 F.3d 443, 446–47 (9th Cir. 2000).

///

"On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017). Screening pursuant to section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.*

Section 1983 of title 42 of the United States Code "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II. Plaintiff's Factual Allegations

In Count 1 of his Complaint, Plaintiff alleges Warden Pollard and Correctional Officers Cuevas, Byrnes, Kako, Meeks, and M. Garcia, who were responsible for keeping Plaintiff and other prisoners in RJD's "C" Facility safe from COVID-19 exposure, all "knowingly and unreasonably disregard[ed] an objectively intolerable risk" of harm by "respond[ing] with lax[]" and "loosely applied" infection-control safety measures. Compl. at 4. Specifically, Plaintiff alleges these Defendants failed to implement preventative social distancing measures in Building 11, double-celled inmates, required inmates to eat morning and evening meals together, and allowed inmates to work in food handling

without first requiring them to submit negative COVID-19 swab tests. *Id.* Plaintiff further alleges Defendants provided prisoners with inadequate and counterfeit personal protective equipment, failed to sanitize and decontaminate surfaces, mixed the laundry of infected and non-infected prisoners, and permitted Officer Cuevas to "work[] while positive for the virus." *Id.* at 5–7. As a result of having "come into close contact" with Cuevas due to his working hours as an "ADA/Helper," Plaintiff alleges he contracted COVID-19 and was hospitalized at Alvarado Hospital Medical Center from December 18 through 23, 2020, where Plaintiff required remdesivir, convalescent plasma, lovenox, vitamin C, Decadron, and oxygen treatment. *Id.* at 5–6.

In Count 2, Plaintiff alleges he awoke on the morning of February 2, 2021, to discover his rear cell window was "completely cracked." *Id.* at 8. During the medication release at approximately 9:30 a.m., Plaintiff reported the broken window to Defendant M. Garcia and requested a maintenance work order. *Id.* Garcia entered Plaintiff's cell, observed the window, and later ordered Plaintiff to report to the "C" Facility Program Office, where Plaintiff was interviewed by Sgt. Rico. *Id.* Plaintiff "affirmatively stated that [he] did not break the window" and explained that "the three small stones found in [his] work boots were used to set [his] hotplate over while cooking." *Id.* Nevertheless, Plaintiff was escorted to the I.S.U. Office and interviewed again by Lt. Martinez, who "endorsed Sergeant Rico's false allegations of attempted escape." *Id.* at 8–9.

As a result, Plaintiff claims to have remained in Administrative Segregation ("Ad-Seg") for seven days, and he alleges Defendants Garcia, Rico, and Martinez filed these false charges of attempted escape "in retaliation for making a grievance on the mass deadly COVID-19 outbreak." *Id.* at 9.[3] Plaintiff contends that, before this incident, he had been

---

[3] The court notes that Plaintiff claims to have exhausted his administrative remedies by "us[ing] the prisoner 602 grievance procedure available at RJD . . . to try to solve the problem[s]" before he filed suit, refers to his CDCR 602 grievance Log No. 811114 and Log No. 90469, and claims copies of these grievances are attached to his Complaint as Exhibits D and E. *See* Compl. at 10. He claims to have presented these grievances on January 15, 2021, and February 12, 2021, respectively. *Id.* Plaintiff further

5

disciplinary-free for seven years, and Plaintiff implies the disciplinary offense would affect his "pending re-sentencing under Penal Code 1170.126." *Id.* Plaintiff maintains it is physically impossible for him to fit through a 4-inch-wide cell window, and claims he was told by an unidentified Ad-Seg officer that "somebody wanted to do [him]" and that Cuevas "said he didn't want [Plaintiff] back in his building because somebody told him [Plaintiff] was suing him." *Id.*

### III. Analysis

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. In order to state a plausible Eighth Amendment claim for relief, a plaintiff must allege facts sufficient to show that the defendants acted with "deliberate indifference." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Iqbal*, 556 U.S. at 678. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d at 1076). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Prison officials have a duty to protect inmates from communicable diseases. *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with persons

---

claims to have filed a Government Claim against the California Department of Corrections and Rehabilitation "and its employees at RJD" and refers to Claim No. 2001374 as Exhibit C. *Id.* at 11. However, no exhibits were appended to Plaintiff's Complaint.

suffering from infectious diseases, such as hepatitis and venereal disease, and the individuals' "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening"); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases—HIV, hepatitis C, and Heliobacter pylori—and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); *cf. Maney v. Hall*, 516 F. Supp. 2d 1161, 1182 (D. Or. 2021) ("By prioritizing those working in correctional settings over AICs [adults in custody] living in correctional settings, and by prioritizing those living and working in other congregate care settings over AICs living in a congregate care setting, Defendants have demonstrated deliberate indifference to the serious risk of harm faced by AICs.").

As to Count 1, the Court finds Plaintiff has alleged a plausible Eighth Amendment claim against Defendants Cuevas, Byrnes, Kako, Garcia, and Meeks with respect to their purported failures to sufficiently implement adequate COVID-19 exposure and protection measures within RJD's "C" Facility, Building 11, prior to his contracting the virus in December 2020. *See Iqbal*, 556 U.S. at 678; *Helling*, 509 U.S. at 33; *Andrews*, 493 F.3d at 1050. Specifically, Plaintiff alleges Defendants "knowingly and unreasonably disregard[ed] objectively intolerable risk of harm" by permitting Officer Cuevas to "work[] while positive for the virus," by requiring inmates to double cell, by failing to require negative COVID testing of inmate food handlers, by providing inmates with counterfeit personal protective equipment, and by neglecting to identify and separate infected inmate laundry. *See* Compl. at 4–7. Plaintiff alleges these systemic and individualized failures caused a "mass deadly COVID-19 outbreak" throughout the facility, which resulted in his contracting the virus on December 14, 2020, and suffering injuries sufficient to require outside hospitalization for five days. *Id.* at 5. Taken together and liberally construed, these allegations "are sufficient to warrant ordering [Defendants] to file an answer" because they survive the "low threshold" required to plead a plausible claim for relief under the Eighth

7

Amendment. *Wilhelm*, 680 F.3d at 1116; *see also Hutto*, 437 U.S. at 682–83; *Andrews*, 493 F.3d at 1050.

Plaintiff's allegations in Count 2 also state a plausible First Amendment retaliation claim against Defendants Cuevas, M. Garcia, Rico, and T. Martinez.[4] Specifically, Plaintiff claims that approximately one month after he was released from the hospital after having contracted COVID-19 and after he filed "a grievance on the mass deadly COVID-19 outbreak"—which he attributed in part to Defendant Cuevas—Defendants Garcia, Martinez, and Rico filed unsound, "groundless," and "false charges of attempted escape" against him "because somebody told [Cuevas] [Plaintiff] was suing him." Compl. at 9. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The Ninth Circuit has held that,

> [w]ithin the prison context, a viable First Amendment retaliation claim entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). A prisoner also must allege a retaliatory motive—

---

[4] To the extent Plaintiff also mentions a "due process liberty interest" but invokes only the First and Eighth Amendments as the constitutional bases for his claims, *see* Compl. at 11, the Court has liberally construed Plaintiff's allegations but nonetheless finds no viable Fourteenth Amendment violation pled. *See Albright v. Oliver,* 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'") (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).

that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114. However, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). As pleaded, Plaintiff's retaliation claims, like his Eighth Amendment claims, also "are sufficient to warrant ordering [Defendants] to file an answer." *Wilhelm*, 680 F.3d at 1116.

In sum, the Court's review of Plaintiff's Complaint reveals cognizable First and Eighth Amendment claims that are not subject to sua sponte dismissal pursuant to 28 U.S.C. §§ 1915A(b)(1) and/or (2). However, it does not appear Plaintiff has requested that the Clerk issue a summons, "present[ed] a summons to the clerk for signature and seal" pursuant to Fed. R. Civ. P. 4(b), or executed service of his Complaint upon any of the named Defendants. Absent a specific request and court order that the U.S. Marshal effect service on their behalf pursuant to Fed. R. Civ. P. 4(c)(3), persons like Plaintiff, who prepay civil filing fees, "remain[] responsible for timely service." *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

## CONCLUSION

In light of the foregoing, the Court sua sponte **DIRECTS** the Clerk of the Court to issue a summons upon Defendants pursuant to Federal Rule of Civil Procedure 4(b) so that Plaintiff may execute service upon them as required by Federal Rule of Civil Procedure 4(c). Plaintiff must (1) personally serve Defendants <u>within 90 days</u> of the date of this Order *and* file proof of that service pursuant to Federal Rule of Civil Procedure 4(*l*) *or* (2) procure a waiver of personal service as to each of the named Defendants pursuant to Federal Rule of Civil Procedure 4(d) <u>within 90 days</u> of the date of this Order, or Plaintiff will face

/ / /
/ / /
/ / /
/ / /

dismissal without prejudice based on his failure to prosecute pursuant to Federal Rule of Civil Procedure 4(m).[5]

**IT IS SO ORDERED.**

Dated: June 14, 2022

Hon. Janis L. Sammartino
United States District Judge

---

[5] Because Plaintiff is *not* proceeding IFP pursuant to 28 U.S.C. § 1915, he remains "responsible for having the summons and complaint served within the time allowed by Rule 4(m)" now that his pleading has survived the sua sponte screening required by 28 U.S.C. § 1915A. *See* Fed. R. Civ. P. 4(c)(1). The Court has tolled Rule 4(m)'s time limit for service while conducting its screening. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1204 n.8 (9th Cir. 2014) (noting that "[o]ther federal circuit courts of appeals have held that the [90]–day service period is tolled until the court screens a plaintiff's in forma pauperis complaint and authorizes service of process") (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996)).